St. Louis, Iron Mountain & Southern Railway
Company v. Fuqua.

Opinion delivered July 6, 1914.

1. RAILROADS—PLATFORMS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE.—A passenger on one of defendant's trains, while debarking from a train, caught her foot on a retaining wall which projected above the platform, fell and sustained injuries. *Held*, it will not be held that the passenger was negligent, as a matter of law, for not seeing the projection.

2. RAILROADS—INJURY TO PASSENGER—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—The question of the contributory negligence of a passenger, who fell by reason of catching her foot on a projection on the station platform, is for the jury.

3. EVIDENCE—PRIVILEGED COMMUNICATIONS—ATTENDING PHYSICIAN.—A physician may not testify as to any information which he has acquired from his patient, while attending him in a professional character, and which information was necessary to enable him to prescribe as a physician.

4. INSTRUCTIONS—ONE ISSUE.—The trial court is not required to multiply instructions upon the same point.

5. RAILROADS—INJURY TO PASSENGER—DAMAGES.—Where deceased fell and was injured by reason of a defect in defendant's station platform, and suffered great pain, a verdict of $1,500 damages in favor of her administrator, is not excessive.

6. EVIDENCE—CONFLICT—QUESTION FOR JURY.—Where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury.

7. EVIDENCE—SCINTILLA RULE—QUESTION FOR JURY.—A scintilla of evidence is not sufficient to support a verdict, and the verdict of a jury can not be based upon surmise and conjecture.

8. EVIDENCE—CIRCUMSTANTIAL EVIDENCE—QUESTION FOR JURY.—Any issue of fact in controversy may be established by circumstantial evidence, where the circumstances adduced in evidence are such that reasonable minds might draw different conclusions therefrom.

9. RAILROADS—INJURY TO PASSENGER—SUFFICIENCY OF THE EVIDENCE.— Deceased, a passenger, sustained an injury by falling, due to a defect in defendant railroad company's platform. *Held,* the evidence was sufficient to show that an injury received thereby, resulted in subsequent and continued suffering for a period of eleven months, until her death, for which defendant was liable in damages.

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; affirmed.

*E. B. Kinsworthy, J. C. Knox* and *T. D. Crawford,* for appellant.

1. Doctor Smith should have been permitted to answer the questions propounded to him, the first three of which did not call for any information acquired from the patient while attending her in a professional capacity and necessary to enable him to prescribe for her; and as to the fourth question, whether it should have been answered or was privileged, depends upon whether it would disclose such information as was necessary to enable him to prescribe. Kirby's Dig., § 3098; 40 Cyc. 2384; 31 Ark. 684.

2. The court erred in not giving instruction 4, requested by appellant, because the instruction 4 given by the court on the same point was too involved and obscure in its terms.

3. The court ought to have directed a verdict in favor of appellant, because the evidence shows that if Mrs. Fuqua had been keeping a proper lookout she could have discovered the alleged defect in the floor of the platform, and could have avoided stumbling over it. The defect, if any existed, was open and patent, and no emergency is shown which would have prevented her from taking proper precaution to avoid stumbling. 11 S. E.

991; 12 L. R. A. 293. A carrier is not an insurer of a passenger against injury after he has reached his destination. With reference to depot accommodations, including platforms, the duty of the carrier is to exercise ordinary care to keep them in a reasonably safe condition for the benefit of any who have occasion to go there. 90 Ark. 70; 70 Ark. 136; 96 Ark. 32; *Id.* 315; 37 Ark. 516; *Id.* 519; 46 Ark. 182. See also 19 L. R. A. 460; 58 Ill. App. 130; 79 Ark. 437; 95 Ark. 477; 44 Ark. 524; 46 Ark. 555; 3 Labatt, Master & Servant, § 1032; 4 Wall. 189.

4. From the evidence and the circumstances of this case, it is patent that the verdict is excessive.

*E. E. Hopson,* for appellee.

1. The court properly refused to admit the testimony of Doctor Smith. Kirby's Dig., § 3098; 98 Ark. 352, 136 S. W. 651.

2. Since appellant admits that the court's fourth instruction was correct, it was certainly not error to refuse to give the same instruction in different form.

3. Appellant's contention that the trial court should have directed a verdict in its favor, can hardly be taken as intended seriously, in view of the degree of care required of a passenger at a railway station as defined by this court in *Railway Company* v. *Barnett,* 65 Ark. 255, 45 S. W. 550. There was abundant evidence on which to send the case to the jury, and it is sufficient to sustain their verdict. 90 Ark. 103; 86 Ark. 608; 85 Ark. 195; 82 Ark. 375; 65 Ark. 125; 76 Ark. 327; 57 Ark. 577; 47 Ark. 196.

4. So far from the verdict being excessive, the appellant, under the evidence, is rather to be congratulated because the amount returned was no greater.

Hart, J. J. W. Fuqua, as administrator of the estate of Mrs. Ida Fuqua, instituted this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damages on account of the alleged negligence of said railway company in failing to provide a safe platform for its passengers. The railway company de-

nied negligence, and alleged contributory negligence on the part of Mrs. Ida Fuqua. The facts proved by appellee, briefly stated, are as follows:

The depot platform of the railway company at Arkansas City is made of cinders and clinkers and the platform is about five feet higher than the surrounding land and has a retaining wall around it constructed of wooden beams. On the 7th day of September, 1911, Mrs. Ida Fuqua and one of her daughters debarked from one of appellant's passenger trains at Arkansas City and started across the platform. Just as they arrived at the top of the steps, Mrs. Fuqua fell. Her daughter at the time had hold of her arm and they both stumbled and fell together.

Mrs. Fuqua was a small woman, weighing about ninety-three pounds, and her daughter held her up so that neither of them fell flat to the ground. They both stumbled and fell down the steps, and Mrs. Fuqua was wrenched in the fall. The daughter stated that as they went to step off the platform down to the steps there was a projection of the retaining wall four or five inches higher than the cinders which composed the platform and that her mother stumbled over this projection and that caused her to fall.

Mrs. Fuqua and her daughter went about two blocks from the depot to the office of Mr. Fuqua. Mr. Fuqua then assisted his wife home and placed her in bed. She began to have hemorrhages from the womb a day or two after that and continued to have them until her death, about eleven months thereafter. She was never able to leave the house after she was injured and suffered intense pain most of the time thereafter until she died.

On the other hand, it was shown by the railway company that there was no projection of the retaining wall above the floor of the platform and that the platform was safe in every particular.

It is contended by counsel for appellant that the railway company was not guilty of negligence in construct-

ing and maintaining its platform and that Mrs. Fuqua was guilty of contributory negligence.

In the case of the *Arkansas Midland Railway Company* v. *Robinson*, 96 Ark. 32, the court held: "It is the duty of a railway company to exercise ordinary care to keep its platform in a safe condition for the use of its passengers and others who have a right to go there."

In that case there was testimony tending to prove that plaintiff went upon defendant's platform for the purpose of taking passage upon the cars, that her heel caught in a small hole in the platform steps, that she lost her balance, fell, and was injured. A finding that the defendant was negligent and that plaintiff was not guilty of contributory negligence was sustained. See, also, *St. Louis, I. M. & S. Ry. Co.* v. *Barnett*, 65 Ark. 255.

(1) It will be noted in the present case that the evidence for appellee shows that the depot platform was about five feet higher than the surrounding land and that steps were constructed leading up to the platform; that a retaining wall was constructed around the platform and that it projected four or five inches above the floor of the platform where the steps were. Mrs. Fuqua and her daughter debarked from the train and started to go down the steps of the platform, when Mrs. Fuqua's foot was caught on the projection above the platform which caused her to stumble and fall. We can not say, as a matter of law, that she saw, or should have seen, the projection above the platform, and was, therefore, guilty of negligence.

As was said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Barnett, supra,* "Passengers are invited by railroads upon their station platforms for the purpose of making entrance to and exit from their trains. There is always more or less noise and confusion incident to the running of trains. Then the jostling and scurrying to and fro of the crowds, passengers and others, coming and going, altogether, make the circumstances quite unpropitious for passengers to make minute or extended investigations for their own safety. They do not have

to do so.  They may naturally and properly expect that the railroad has used every reasonable and prudent precaution to make their platforms safe, and may rest upon that assurance, only exercising ordinary care to prevent injury to themselves in the use of them.''

(2)  The jury were the judges of the credibility of the witnesses and the weight to be given to their testimony, and, under the facts and circumstances adduced in evidence, we think the questions of the negligence of the railway company and the contributory negligence of Mrs. Fuqua were properly left to the jury as questions of fact.

(3-4)  Counsel for appellant offered to prove by a physician who had attended Mrs. Fuqua that she was afflicted with cancer and died of that disease. The court held that the testimony was incompetent, and the ruling of the court was correct.  The excluded testimony was objected to by counsel for appellee because under section 3098 of Kirby's Digest a physician may not disclose any information which he may have acquired from his patient while attending him in a professional character and which information was necessary to enable him to prescribe as a physician.  See *Missouri & North Arkansas Railroad Co.* v. *Daniels,* 98 Ark. 352; *Mutual Life Ins. Co. of New York* v. *Owen,* 111 Ark. 534; 164 S. W. 720.

Counsel for appellant asked the court to instruct the jury that if it should find from the evidence that by the exercise of ordinary care for her own safety Mrs. Fuqua could have prevented the injury, then it was the duty of the jury to find for the railway company.  The instruction asked was fully covered by another instruction given by the court and there was no error in refusing to give it.  We have repeatedly held that the court is not required to multiply instructions upon the same point. Counsel for appellant admit that the instruction given by the court covered the point, but claim that the instruction given was not in as simple and plain language as that asked by them.  We do not agree with them in this contention.  We have examined the instructions given by the court on this point, and think the jury could not have

misunderstood its meaning. It, therefore, was not necessary for the court to repeat the instructions in another form at the request of appellant.

(5) Finally, it is insisted by counsel for appellant that the verdict is excessive, and this we consider the most serious question in the case. Appellee recovered judgment in the sum of $1,500. Mrs. Fuqua died about eleven months after she was injured, and during the whole time suffered intense pain. If her suffering, as contended by appellee, was caused by falling down the steps of the railway company's platform, then, of course, the verdict is not excessive.

It is contended by the railway company, however, that her suffering and death were not caused by the fall but resulted from cancer, with which she was afflicted at the time she received the injury. They admit that she received a slight injury, but say it was only temporary and for a brief space of time, and contend that her subsequent suffering resulted from the cancer with which she was afflicted at the time she was injured.

One of the daughters of Mrs. Fuqua testified that the attending physician told her that her mother was afflicted with cancer and that she was dying of that disease. Physicians introduced by the defendant testified that the discharges from a woman suffering with uterine cancer are very offensive and have a very peculiar odor; that there is always a sloughing off of the womb which is caused by the hemorrhages; that the patient will probably have frequent headaches; that one of the early symptoms of cancer of the womb is headache and that the hemorrhages always relieve the headache temporarily; that cancerous headaches come from the enlargement of the uterus, and usually first affect the patient in the back part of the head and then extend all over the head.

The mother-in-law of Mrs. Fuqua testified that on the day Mrs. Fuqua received her injury and was brought home she looked to be in a very bad condition; that she was pale and had to be helped up the steps of the front

porch and up the stairs in the house; that she was not able to get up the steps without assistance; that after she was undressed her underclothing was spotted around the bottom; that she suffered intensely from that time until she died; and that she was never able to get out of her bed any more except to be wheeled around in a chair. She stated that she was with her constantly after she received her injuries and that she never saw any one suffer more pain than she did during the eleven months she lived after receiving the injury; that a physician examined Mrs. Fuqua about two weeks after the accident; that during the time before the examination was made Mrs. Fuqua constantly had hemorrhages from her womb; that she assisted the physician in making the first examination; that she did not see any sloughing condition of the womb; that it looked like a cut or split; that at first she did not discover any odor at all; that she first began to discover an odor about two or three months after the injury was received; that at this time the condition of the hemorrhage changed; that there was then more mucous than anything else mixed with the blood; and that after that time, for the most part, there was no odor when she had a hemorrhage.

One of the daughters of Mrs. Fuqua testified that her mother was a small woman and had never been robust, but that she had been in fairly good health prior to the time she received her injuries, and that she had been subject to headaches all her life. She was examined, cross-examined and re-examined as to the violence with which her mother fell, and we think it may be fairly inferred from all her testimony that she said, in effect, that though her mother did not fall flat to the ground because she held her up, she did fall with considerable force down the steps and would have fallen heavily to the ground had she not been held up by her.

(6) The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. Direct testimony that the

subsequent suffering of Mrs. Fuqua resulted from the fall, such as testimony from physicians to that effect, is not essential, but it is sufficient if the circumstances be such as to fairly permit the inference that the suffering of Mrs. Fuqua, as testified to by witnesses for appellee, was caused by the injury which she received.

(7) We have not adopted the rule that a scintilla of evidence is sufficient to support a verdict and that for that reason the verdict of the jury can not be based upon surmise and conjecture. While this rule is not to be ignored, it is equally well settled that any issue of fact in controversy may be established by circumstantial evidence where the circumstances adduced in evidence are such that reasonable minds might draw different conclusions therefrom. See *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling,* 107 Ark. 476.

(8-9) It will be noted that the physician testified that in cases of cancer of the womb there was always a sloughing and also a very peculiar odor from the hemorrhages. The mother-in-law of Mrs. Fuqua, who was with her constantly, testified that she was present when Mrs. Fuqua was examined about two weeks after receiving her injuries and assisted the physician in making the examination and that there was then no sloughing of the womb, but that there appeared to be a cut at the edge of the womb. She also stated that there was no peculiar odor from the womb, such as comes from cancer, and that she discovered no odor whatever from the hemorrhages until about two or three months after Mrs. Fuqua received her injuries, and then only for a short time, and that thereafter, at very infrequent intervals, she discovered the same odor.

When we consider these facts, and the further fact that Mrs. Fuqua was able to walk about before she received her injuries and was afterward unable to walk at all, we think it was for the jury to say whether or not the injury she received caused her subsequent suffering and death.

As above stated, though she did not fall flat to the ground, she did stumble down the steps which extended up to the platform, the floor of which was five feet higher than the adjacent ground, and the jury might have inferred that she would have fallen heavily to the ground had she not been held up by her daughter. She was a frail woman, and might have been severely wrenched in her stumbling or falling down the steps, and when all the facts and circumstances are considered in their light most favorable to appellee, we think the jury were warranted in finding that Mrs. Fuqua sustained injuries which resulted in her subsequent suffering when she stumbled and fell from the platform.

We find no prejudicial error in the record, and the judgment will be affirmed.