GRAY *v.* McLAUGHLIN.

4-7342 179 S. W. 2d 686

Opinion delivered April 24, 1944.

*Martin, Wootton & Martin,* for appellant.

*Jay M. Rowland* and *Leo P. McLaughlin,* for appellee.

Robins, J. Appellee recovered judgment based on verdict of a jury in his favor against appellant, an X-ray specialist, for $2,000 for injury alleged to have been sustained by appellee as a result of the negligence of appellant. These grounds for reversal of this judgment are urged by appellant: (1) that appellant was not liable for the negligence of Miss Kathleen Egner, the assistant of appellant, who was making X-ray photographs of appellee's teeth at the time the injury occurred; (2) that there was no proof of any negligence on the part of appellant or his assistant which caused appellee's injury; and (3) that the amount of the verdict was excessive.

## I.

The undisputed evidence shows that appellee received an electric shock and certain burns while X-ray photographs were being made by Miss Kathleen Egner, a technician employed by appellant.

Appellee testified that he went to appellant's office and told him he wanted an X-ray picture made of certain teeth and that appellant then conducted appellee to his X-ray room where he was turned over to Miss Egner; that Miss Egner prepared the table and explained to appellee how he was to place himself on it; that he lay at full length on the table and a picture was first taken of an upper tooth, and then the operation of taking a picture of a second tooth was begun; that he was told by Miss Egner to hold a piece of film behind the lower tooth with his thumb and to swing his head and hand to the left; that Miss Egner shifted appellee's head to the left and moved his thumb so that she could take an X-ray picture through his right cheek; that he was looking at the machine and at her at the time; that "In moving the machine over she hit me here on the finger—

right here on that finger, and when she did the fire and the shock all occurred just at one time, . . .''; that as a result of this shock he went off the table on to the floor and he received burns on the arm and finger and the stomach; that his underclothing caught fire; that Miss Egner ran over toward the door where Dr. Gray was; that he began to feel the burns and smell the odor of burning clothing and burning flesh; that Dr. Gray went out and came back with a tube of lotion; that Dr. Gray said the machine must have come in contact with his belt buckle or tie clasp.

It was shown by the testimony that Miss Egner was an experienced X-ray technician, but was not a physician; that appellant was a practicing physician who had been handling X-ray equipment and specializing in X-ray work for about fourteen years; that during the time Miss Egner was taking the X-ray photographs appellant was in his private office; that his office was so arranged that appellant could see Miss Egner, but could not see the patient; that appellant heard the patient cry out and immediately went into the part of his office where the X-ray machine was situated.

Appellant urges that under the rule laid down in the case of *Runyan* v. *Goodrum,* 147 Ark. 481, 228 S. W. 397, 13 A. L. R. 1403, appellant is not liable in this case, for the reason that the negligence complained of was the negligence of Miss Egner and not that of appellant. In the Runyan case it appeared that Drs. Runyan, Kirby and Sheppard were general practitioners and surgeons operating a hospital in which they maintained an X-ray department under the immediate supervision of a physician who was an X-ray specialist, and that this physician had a woman assistant who actually operated the X-ray machine; that the appellee, Miss Goodrum, was burned by the woman assistant and sued Drs. Runyan, Kirby and Sheppard for damages. It was held in that case that an X-ray specialist, or Roentgenologist, was in the same class with a physician and surgeon, and, for that reason, a general practitioner, not himself an X-ray specialist, should not be liable for injury caused by the negligence

of an X-ray technician employed by him. But in the Runyan case the court stressed the fact that Drs. Runyan, Kirby and Sheppard were not X-ray specialists and had had no training in Roentgenology.

Judge Wood, speaking for the court in that case, said: "Such being our conclusion, it inevitably follows under the doctrine of our own cases that the relation of master and servant cannot exist between physicians and surgeons *who are not X-ray specialists themselves* and the X-ray specialist, or Roentgenologist, whom they employ to assist them in the diagnosis and treatment of diseases." (Italics supplied.) The language just quoted was used by the editors of Corpus Juris (vol. 39, p. 1269) in stating the rule laid down in the *Runyan* case, *supra*.

In the case at bar it is not disputed that appellant was himself an X-ray specialist, who apparently did no other sort of practice except X-ray work, and was not a general practitioner. The facts in this case do not bring it within the rule announced in the *Runyan* case. Doubtless appellee availed himself of the services of appellant because of appellant's reputation for skill and knowledge as a Roentgenologist. Appellee testified that he did not know Miss Egner, and he naturally relied, not on the knowledge and skill of Miss Egner, but upon that of appellant. While Miss Egner was doing the manual work of operating the X-ray machine, it appeared that the machine was separated from the part of the office in which Dr. Gray was at the time by a partition that did not entirely cut off Dr. Gray's view, and that Miss Egner was in sight of Dr. Gray while she was operating the X-ray machine.

The proof established the relation of master and servant between appellant and Miss Egner, so as to render appellant liable for injury caused by the negligence of the latter. "It is an old and thoroughly established doctrine that, where the relation of master and servant exists, the master is responsible to third persons for injuries resulting from wrongful acts or omissions of a servant within the scope of his employment in the master's service." Shearman and Redfield on Negli-

gence, vol. 1, p. 350. "A physician is responsible for an injury done to a patient through the want of proper skill and care in his assistant, apprentice, agent, or employee." 48 C. J. 1137.

In a recent case decided by the Supreme Court of Pennsylvania, *Kelly* v. *Yount*, 338 Pa. 190, 12 Atl. 2d 579, a physician, who was an X-ray specialist, was held liable for injury caused by the negligence of his assistant, who was a skilled X-ray technician, and in that case it was conceded that, under the proof, the X-ray technician was the servant of the physician.

## II.

Miss Egner testified that she was not standing by the table when appellee received the shock, but that she was standing at a control cabinet about six feet away and that she did not cause appellee to receive the shock by moving the tube, as appellee testified she did. There was also some testimony tending to show that it was improbable that appellee could receive the shock in the manner claimed by him. Appellant's contention is that appellee himself raised his hand up in some way a distance of about fourteen inches and touched the tube thereby causing the shock. Appellee denied this, and testified that the electric shock was caused by Miss Egner pushing the tube against him. It was within the province of the jury to settle the conflict in the testimony, and the jury saw fit to accept appellee's version.

Furthermore, it is not denied that appellee did receive an electric shock strong enough to set fire to his clothing and to burn him in several places, and that he received this shock while he was on the operating table of appellant, and that the shock was caused in some manner by appellant's X-ray machine. This being true, it did not devolve upon appellee to show the exact cause of the injury. In the case of *Kelly* v. *Yount, supra,* the Supreme Court of Pennsylvania, in discussing the rule as to the burden of proof in a case of this kind, said: "When the thing which causes the injury is shown to be under the management of defendants and the acci-

dent is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by defendants, that the accident arose from a want of care, . . ."

We conclude that there was substantial evidence to support the finding of the jury that appellee's injury was caused by the negligent operation of the X-ray machine.

### III.

The contention that the amount of the judgment is excessive must be sustained. The testimony of appellee's physician showed that appellee received one burn on his stomach about "the size of a fair sized wart," another burn on the chest which was smaller, two very small burns about the size of a grain of wheat on the left arm and a small burn on the finger; and that all these burns were superficial and self-sterilizing. While appellee received treatment for these burns for several weeks he was not disabled therefrom at any time, and continued to carry on his regular work. He made no claim for medical expense. Appellee stated that he suffered from shock, and that the condition of a preexisting hernia was aggravated as a result thereof, but there was no medical testimony as to any injury except the actual burns. We conclude that any judgment in this case for over $1,000 would be excessive. If, therefore, appellee, within fifteen days, will remit all of the judgment herein, above the sum of $1,000, the judgment will be affirmed, otherwise it will be reversed and remanded for new trial.