LAFAYETTE COUNTY INDUSTRIAL DEVELOPMENT CORPORATION
v. FIRST NATIONAL BANK OF MAGNOLIA

5-4785                                    436 S.W. 2d 814

Opinion Delivered February 10, 1969

110

*Rose, Meek, House, Barron, Nash & Williamson* for appellant.

*Gaughan, Laney, Barnes & Roberts* and *Keith, Clegg & Eckert* for appellee.

J. FRED JONES, Justice.   Lafayette County Industrial Development Corporation filed suit in the Columbia County Chancery Court against the First National Bank of Magnolia seeking restitution of funds deposited in the bank to the account of Magnolia Steel Corporation, and for a declaration of a constructive trust upon the funds so deposited.   The bank challenged the sufficiency of the evidence by motion, amounting to a demurrer, under Ark. Stat. Ann. § 27-1729 (Repl. 1962).   The chancellor granted the motion and the Development Corporation has appealed relying upon a single point for reversal, designated as follows:

"The Chancellor erred in dismissing the complaint of the appellant for the reason that as a matter of law the appellant's proof entitled it to the relief prayed."

The primary factual background for this litigation appears as follows:   Mr. W. H. Hoster was a resident of Oklahoma and was engaged in the steel mill business in Oklahoma City under the corporate or trade name of Oklahoma Steel Company.   Hoster was interested in an Arkansas location for the establishment of a small roll-

ing mill for processing scrap steel. Mr. W. C. Blewster was the president of the First National Bank of Magnolia in Columbia County, Arkansas, and was an active member of the Magnolia Chamber of Commerce. Mr. Blewster was interested in obtaining new industry for the Magnolia area, so he, and other members of the Magnolia Chamber of Commerce prevailed upon Mr. Hoster to locate and build a rolling mill near Magnolia in Columbia County. As a first step in regard to the Magnolia program, on February 28, 1963, Mr. Hoster formed an Arkansas corporation named "Columbia Steel Corporation," and with the exception of two qualifying shares, he was the sole owner of the stock issued.

Lafayette County had been designated by the Area Redevelopment Administration (A.R.A.) as an area of substantial unemployment and eligible for financial assistance under federal laws; and Mr. Blewster owned an interest in an organization which has procured leases on iron ore deposits in Lafayette and Nevada Counties.

Some leading citizens of Lafayette County were invited by Mr. Blewster to attend a Chamber of Commerce meeting in Magnolia where Mr. Hoster was introduced and his plans for the rolling mill at Magnolia were explained. The citizens of Lafayette County were urged to attempt the procurement of a steel mill in their area under the A.R.A. program. The Lafayette County citizens proceeded to organize the appellant corporation for the purpose of sponsoring a steel mill and blast furnace project near Stamps under the A.R.A. program. On December 10, 1962, Mr. Hoster formed a domestic corporation named "Magnolia Steel Corporation" for the purpose of erecting a steel mill at Stamps for the processing of the iron ore in Lafayette and Nevada Counties. With the exception of two qualifying shares, Hoster was the owner of all the stock issued in this corporation. On April 5, 1963, Magnolia Steel applied for an A.R.A. loan and on August 9, 1963, a government loan was authorized for the project at Stamps in the

amount of $977,763.00. The loan was to be secured by a mortgage subordinate only to the security for a loan to be made by the appellant bank and its correspondent banks in the amount of not more than $300,850.00. The appellant was required under the authorization to make available to Magnolia Steel not less than $150,425.00 in the form of equity capital or as a loan covered by a standby agreement. Under the terms of the authorization it was necessary for Magnolia Steel to have available, from sources other than the A.R.A. loan, not less than $375,212.00 in the form of equity capital. No less than $75,212.00 of this amount was to be spent solely on account of the cost of the project and no less than $300,000.00 was to be made available for working capital.

As a part of the procedure in procuring the government loan, on November 20, 1963, the appellant agreed to loan to Magnolia Steel $150,425.00 to be secured by a third mortgage lien subordinate to a first mortgage lien securing a proposed loan by the appellee bank, and the lien of a second mortgage to be given to A.R.A. The appellant agreed to make the proceeds of its loan available to Magnolia Steel on or about December 20, 1963. This agreed loan was to be evidenced by a note temporarily secured by a mortgage on land to be acquired for the project.

In carrying out its agreement, the appellant caused to be issued and sold, Lafayette County Industrial Development bonds in the amount of $150,425.00, and the appellee, First National Bank of Magnolia, was made paying agent. These bonds were sold to citizens of Lafayette County and by December 23, 1963, the appellant had raised the net amount of $146,425.00.

In the meantime, Columbia Steel was engaged in financing its own operation in connection with the construction and operation of its plant in Columbia County near Magnolia. In February and March, 1963, the ap-

pellee bank made two loans totaling its loan limit of $110,000.00 to Columbia Steel. The appellee made various loans to Mr. Hoster and on November 26, 1963, made loans, apparently carried on the books as cash items, in the amount of $75,000.00 to Hoster and $50,000.00 to Oklahoma Steel. On the same date, November 26, 1963, the appellee made an unsecured loan of $100,000.00 to Magnolia Steel. No part of this loan was ever deposited to the account of Magnolia Steel, but on November 27, 1963, the day following the loans to Hoster, Oklahoma Steel and Magnolia Steel, the sum of $225,000.00 was deposited to the account of Columbia Steel. There were several withdrawals from the Columbia Steel account, including $75,000.00 in repayment of the loan to Hoster, and $50,000.00 in repayment of the loan to Oklahoma Steel..

The appellant knew nothing of the appellee's loan of $100,000.00 to Magnolia Steel, when on December 23, 1963, the appellant delivered its check to Magnolia Steel in the amount of $146,425.00. The check was endorsed by Hoster who then handed it to Blewster, and on the following day, December 24, 1963, the check was deposited in the appellee bank to the account of Magnolia Steel. On December 27, the next banking day following Christmas, $100,000.00 was withdrawn from the account of Magnolia Steel and used to purchase a cashier's check made payable in the amount of $100,000.00 to the appellee bank as security for the $100,000.00 loan made on November 26 to Magnolia Steel and deposited to the account of Columbia Steel.

Subsequent to the above transactions, Mr. Blewster resigned as president of the Magnolia bank; the cashier's check was cashed and the proceeds applied in satisfaction of the bank loan to Magnolia Steel; Magnolia Steel canceled its loan application with A.R.A. and Magnolia Steel was merged with Columbia Steel. The appellee bank purchased the assets of Columbia Steel in Columbia County under mortgage foreclosure and

appellant purchased at foreclosure the only assets of Magnolia Steel, consisting of eighty acres of land for plant site in Lafayette County, which had been purchased for $24,000.00 and paid for, at appellant's insistence, out of the proceeds of the bond sale deposited to the account of Magnolia Steel.

We now come to the point of law on which this case turns. The appellee challenged the sufficiency of the evidence by motion filed under authority of Ark. Stat. Ann. § 27-1729 (Repl. 1963), which provides that in any chancery case the defendant may, at the close of plaintiff's case, file a written motion challenging the sufficiency of the evidence to warrant the relief prayed. If the trial court grants the motion and we reverse his action on appeal, we are required by the statute to remand the cause for the development of the defendant's proof. In arguing the insufficiency of appellant's evidence, the appellee says:

"[I]t offers no evidence that the First National Bank or any of its officers knew, or had reason to know, that W. H. Hoster was not spending these funds on behalf of Appellant.

\* \* \*

Proof from Appellant's own officers shows that they, *like the Bank president,* all understood and believed that W. H. Hoster was using funds to plan for, purchase, and construct equipment for the Magnolia Steel Corporation." (Emphasis supplied.)

Appellee concludes its argument with this statement:

"The Chancellor heard the testimony; he observed and heard the evasiveness of Appellant's officers much of which is obscured in the abstract of testimony. The Chancellor knew the quantum

of proof required, and his duty to dismiss upon motion properly presented."

We agree with the appellant that this case is controlled by our decision in *Werbe* v. *Holt*, 217 Ark. 198, 229 S.W. 2d 225, and although the trial court mentioned "preponderance of the evidence" in the *Werbe* case and the chancellor did not do so in the case at bar, we are of the opinion that in hearing the testimony and observing the evasivenesss of appellant's officers, as argued by the appellee, the chancellor also considered what he observed and heard, and that he weighed the evidence in arriving at his conclusion to grant appellee's motion in this case. In so doing we conclude, that the chancellor erred.

*Werbe* v. *Holt, supra,* was a case of first impression under Ark. Stat. Ann. § 27-1729, supra, and as to the questions raised by the statute and answered in *Werbe,* we said:

"When the defendant in an equity or probate case asks for judgment at the close of the plaintiff's testimony, should the trial judge view the evidence in the light most favorable to the plaintiff to determine whether a *prima facie* case has been made, or should he weigh the testimony to decide whether the plaintiff has proved his case by a preponderance of the evidence? In short, does a motion filed under Act 470 present an issue of law or of fact?

\* \* \*

After a painstaking study of this matter we are unanimously of the opinion that the motion presents a question of law and not of fact. The General Assembly evidently chose its language with care, and what the motion challenges is 'the sufficiency of the evidence' to warrant the relief prayed. The quoted phrase has a familiar legal meaning—a meaning that does not involve the weighing of evi-

dence. For instance, it is often said that the defendant's motion for a directed verdict in suits at law challenges 'the sufficiency of the evidency' to take the case to the jury. Here the legislature has used a phrase of well known legal signification, and it is presumed to have used the language in that sense. *Fernwood Mining Co.* v. *Pluma,* 138 Ark. 459, 213 S.W. 397.

\* \* \*

The question may arise either in equity cases, where the chancellor is the arbiter of the facts, or in cases tried at law without a jury where also the trial judge decides all issues of fact. By the overwhelming weight of authority it is the trial court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only if his evidence when so considered fails to make a *prima facie* case."

In *Neely* v. *Jones,* 232 Ark. 411, 337 S.W. 2d 872, the correctness of sustaining a demurrer to evidence was again raised, and in that case we said:

"The only question is whether the demurrer to the evidence was properly sustained. This depends, under our holding in *Werbe* v. *Holt,* 217 Ark. 198, 229 S.W. 2d 225, upon whether the proof, viewed in its most favorable light, would have presented a question of fact for the jury if the case had been tried at law."

In reversing the chancellor's decree sustaining the demurrer in *Neely* v. *Jones,* this court said:

"Here the trial court's action in sustaining a demurrer to the evidence can be affirmed only if the plaintiffs offered no substantial testimony upon the controlling question of fact. We are unable

to say that their proof falls completely short of establishing a *prima facie* case.''

What the chancellor did in the case at bar was tantamount to directing a verdict for the defendant at the close of the plaintiff's evidence in a law case.    In *Hawkins* v. *Missouri Pacific Railroad Co., Thompson Trustee*, 217 Ark. 42, 228 S.W. 2d 642, this court said:

> ''A directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable men could possibly find the issues for the plaintiff.    In such circumstances the trial judge must give to the plaintiff's evidence its highest probative value, taking into account all reasonable inferences that may sensibly be deduced from it, and may grant the motion only if the evidence viewed in that light would be so insubstantial as to require him to set aside a verdict for the plaintiff should such a verdict be returned by the jury.''

And again in *St. Louis, I.M. & S. Ry. Co.* v. *Fuqua*, 114 Ark. 112, 169 S.W. 786, we said:

> ''The rule is that where fair-minded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury.''

We conclude that the appellant offered some substantial evidence in support of its allegations in this case and that the chancellor erred in granting appellee's motion before the appellee offered additional evidence or rested its case.

The decree of the chancellor is reversed and this cause remanded for a complete trial on the merits.

Reversed and remanded.