MEDI-STAT, INC. and Dr. Michael Eades *v.* Gail
KUSTURIN, Individually and as Administratrix of the
Estate of Timothy Cowan, and Dennis Cowan

89-238                                          792 S.W.2d 869

Supreme Court of Arkansas
Opinion delivered July 9, 1990
[Supplemental Opinion on Denial of Rehearing
November 12, 1990.*]

*Dudley, Newbern, and Glaze, JJ., would grant rehearing. Turner, J., not
participating.

46

*Friday, Eldredge & Clark*, by: *C. Tab Turner* and *Scott H. Tucker*, for appellants.

*Hamilton & Hicks*, by: *Charles R. Hicks* and *George R. Wise, Jr.*, for appellees.

SAM ED GIBSON, Special Justice. Timothy Cowan went to a Medi-Stat, Inc. clinic for a prescription and a medical clearance to participate in a court-ordered alcohol rehabilitation program using the drug Antabuse. Cowan began Antabuse therapy on December 12, 1985. On February 12, 1986, he was admitted to a hospital where he died twelve days later of hepatitic (liver) failure resulting from his use of Antabuse.

Appellees sued Medi-Stat, Inc. (Medi-Stat) and Dr. Michael Eades on the basis of negligence in prescribing Antabuse and in following Cowan's course with the drug. The trial court denied appellant's motion for directed verdict and judgment NOV. From a verdict in favor of the appellees, the appellants appeal and contend that Medi-Stat was not responsible for the negligence of the physicians who personally treated Cowan and that the evidence was insufficient to support the verdict. We

disagree and affirm.

Appellants initially argue that medical doctors cannot as a matter of law be servants or employees in the sense required by the doctrine of respondeat superior and rely on *Runyan* v. *Goodrum*, 147 Ark. 481, 228 S.W. 397 (1921), and *Arkansas Midland R.R. Co.* v. *Pearson*, 98 Ark. 399, 135 S.W. 917 (1908).

*Runyan* v. *Goodrum, supra,* was decided at a time when x-ray technology was first being accepted as part of the practice of medicine. That decision holds that the relationship of master and servant cannot exist between physicians and surgeons, who are not x-ray specialists themselves, and the x-ray technicians whom they employ to assist them in the treatment and diagnosis of diseases. The *Runyan* decision relies on *Arkansas Midland R.R. Co.* v. *Pearson, supra,* but *Pearson* was decided on a different issue: namely, given the facts presented, whether the railroad's providing medical care was an eleemosynary activity and thus protected from tort liability.

In *Pearson*, the plaintiff's decedent was injured on the job and was treated by the employer's physicians and in medical facilities provided by the employer. The decedent's estate alleged that negligent medical treatment caused the death of the decedent. In considering whether the railroad corporation could be held responsible for the negligence of its physician employees, we said:

> This question is for the first time before our court, and it has been decided differently by courts of other jurisdictions. A physician cannot be regarded as an agent or servant in the usual sense of the term, since he is not and necessarily cannot be directed in the diagnosing of diseases and injuries and prescribing treatment therefor; his office being to exercise his best skill and judgment in such matters, without control from those by whom he is called or his fees are paid. It is generally held that hospitals conducted for charity are not responsible for the negligence or malpractice of their physicians, and that persons and hospitals who treat patients for hire, with the expectation and hope of securing therefrom gain and profit, are liable for such negligence and malpractice on their part.

We examined the activity of the railroad in providing medical care facilities and physicians for railroad employees and concluded that, at most, the railroad corporation could only be considered a trustee for the proper administration and expenditure of money devoted to that purpose and should be held only to ordinary care in the selection of competent and skilled physicians to administer relief and provide attention to sick and injured employees.

We further noted:

> If the railroad company did in fact realize a profit from the total deductions from the wages of its employees for the hospital fund after paying for the support and maintenance thereof and the employment of physicians, . . . the rule might be different.

Two additional decisions aid in understanding the *Runyan* decision in its proper perspective in the present case: *Gray* v. *McLaughlin*, 207 Ark. 191, 179 S.W.2d 686 (1944), involved a claim for damages arising from x-ray burns. We noted factual similarities between *Runyan* and *Gray* and observed:

> But in the *Runyan* case the court stressed the fact that Doctors Runyan, Kirby and Sheppard were not x-ray specialists and had no training in Roentgenology.

The court then concluded that while the relationship of master and servant could not exist between physicians and surgeons, who were not themselves x-ray specialists, and an x-ray specialist whom they employ to assist them in the diagnosis and treatment of diseases, the relationship of master and servant could exist between a physician who was an x-ray specialist and a technician employed by him to operate an x-ray machine in his office.

In *Chicago, Rock Island and Pac. R.R. Co.* v. *Britt*, 189 Ark. 571, 74 S.W.2d 398 (1934), the question of whether a for-profit business corporation, in that case a railroad company, could be vicariously liable under the doctrine of respondeat superior for the medical negligence of a physician employed by it was squarely decided in the affirmative. Ironically, the physician involved was the same Dr. J. P. Runyan who had been a successful appellant in *Runyan*. After discussing the evidence of negligent conduct by

Dr. Runyan and the facts concerning his employment by the railroad, we held:

> This is simply a question of master and servant and of liability of the master for the wrongful conduct of the servant, and as we have said, we think that whether the servant was guilty of negligence was a question of fact and the finding of the jury is conclusive here.

Three members of the court joined in a dissenting opinion by Justice McHaney. The dissent vigorously argued that *Pearson* and *Runyan* controlled the outcome of the decision and mandated a holding that the railroad corporation could not be liable for the injuries caused by Dr. Runyan's medical negligence. From the arguments in the dissenting opinion it is apparent that the majority considered and rejected the proposition that *Runyan* precluded application of the doctrine of respondeat superior to a situation where a business corporation employs a physician to deliver medical services.

In light of our conclusion that a business corporation such as Medi-Stat can be liable for the medical negligence of its physician employees we must consider the appellants' second point of error, in which they contend that the evidence was insufficient to support the verdict.

At trial, the decedent's mother testified that all of Cowan's appointments were scheduled with Medi-Stat and not with a particular physician. She testified that Cowan was treated by the physician present at the clinic at the time of his appointment. Numerous medical records from the Medi-Stat clinic were also introduced at the trial. These records all bear the notation Medi-Stat, Inc. and do not contain any name other than Medi-Stat. None of the records contain any sort of disclaimer or other indication that Medi-Stat is not the medical care provider or that its physicians are not employees of Medi-Stat. All of the billing for the medical services was done by Medi-Stat on Medi-Stat stationery that directed payment of the bill to Medi-Stat. In sum, the treatment took place in a Medi-Stat clinic, the clinic chose the physicians, and the clinic billed on its stationery for the physicians' charges. The verdict was supported by substantial evidence.

■ The appellants contend that there was no substantial evidence to support an award of pecuniary damage resulting from Cowan's death. A parent may recover pecuniary damages for the death of an adult child if there is a reasonable expectation of pecuniary benefit from the continued life of the child. *Fordyce* v. *McCants*, 51 Ark. 509, 11 S. W. 694 (1889). The evidence in this case shows that the decedent had contributed a significant amount of his past earnings to his mother and sisters. He had assisted his mother with the care of his sister, who suffers from cerebral palsy, which enabled the mother to keep that child in the home instead of an institution. When the mother enrolled in college, she and her son agreed that he would work to contribute to the family income to enable her to finish her education. There was substantial evidence from which the jury could have found a reasonable expectation of pecuniary benefit from the continued life of the adult child.

■ Appellants also complain that the trial court took judicial notice of the life expectancy of the mother based on the tables set out in the Arkansas Code. After the completion of testimony, and while the trial court and attorneys were discussing the jury instructions to be given, appellees requested that the court state the mother's life expectancy to the jury. The trial court did so over the appellants' objection. We find no error in that procedure.

■ Finally, the appellants assert that the evidence was insufficient to support the verdict as to Dr. Eades. Seven qualified expert witnesses testified in the case. Each of the experts called to testify by the appellees went through all of the contacts by the decedent with the Medi-Stat clinic, including each of the contacts (by telephone and in person) between the decedent and Dr. Eades. In regard to each contact, those experts expressed opinions (which were sharply disputed by the opinion testimony of the experts presented by appellants) that the care rendered to Cowan failed to meet the standard expected of a physician practicing in Little Rock at the time in question. Two physicians stated their opinions that the substandard care, including that rendered by Dr. Eades, was the cause of Cowen's death. The evidence to support the verdict against Dr. Eades was substantial.

For the reasons stated above, we affirm the decision of the

trial court.

Affirmed.

DUDLEY, NEWBERN, and GLAZE, JJ., would affirm in part and reverse in part.

TURNER, J., not participating.

TOM GLAZE, Justice, concurring in part and dissenting in part. I agree with the majority that sufficient evidence was presented to support the verdict against Dr. Eades. My disagreement with the majority concerns its affirmance of the verdict against Medi-Stat, Inc. On that point, I would reverse.

The part of the majority's holding with which I make exception is the conclusion that Medi-Stat is vicariously liable for the negligence of Dr. Eades. In this context, the doctrine of vicarious liability is also known as respondeat superior. *See* H. Ward Classen, *Hospital Liability for Independent Contractors: Where Do We Go From Here?*, 40 Ark. L. Rev. 469 (1987). Oftentimes this vicarious liability question surrounding a physician's negligence arises in cases involving hospitals. However, in *Norton v. Hefner*, 132 Ark. 18, 198 S.W. 97 (1917), the issue arose when Dr. Norton requested another physician to take charge of Norton's patients, and after doing so the evidence reflects the other physician negligently treated the patient. Although Norton was shown not negligent in the treatment of the patient or selection of the physician, the question posited was whether he was vicariously liable for the other physician's negligence. The *Norton* court said the following:

> [A] party employing a person who follows a distinct and independent occupation of his own, is not responsible for the negligent or improper acts of the other.

The *Norton* court further stated that the doctrine of respondeat superior applies only in case of the negligence of a servant who acts under the directions and control of the master and does not apply to a physician or other professional man who, when employed, acts upon his own initiative and without direction from others.

In other pertinent holdings, the court, consistent with the

rules in *Norton*, stated as follows:

> A physician can not be regarded as an agent or servant in the usual sense of the term, since he is not and necessarily can not be directed in the diagnosing of diseases and injuries and prescribing treatment therefor, his office being to exercise his best skill and judgment in such matters, without control from those by whom he is called or his fees paid.

*Runyan* v. *Goodrum*, 147 Ark. 481, 228 S.W. 397 (1921); *Arkansas Midland Railroad Co.* v. *Pearson*, 98 Ark. 399, 135 S.W. 917 (1911).

When applying the rules announced in the cases above, the Arkansas law seems settled that a hospital or other entity, requiring the services of a physician, is not the employer of an independent contractor physician, and therefore, is not liable for a physician's torts, which arise from his or her negligence or malpractice. *See id.* And, while this appears to be the general rule, it has also been said that if there is a bona fide ongoing employer-employee relationship between the hospital and the physician, the hospital will be held vicariously liable for the tortious actions of the physician that occurs within the scope of his employment. *See* 40 Ark. L. Rev. at 479.

In *Chicago, Rock Island &. Pac. R.R. Co. v. Britt*, 189 Ark. 571, 74 S.W.2d 398 (1934), a case relied upon by the majority, the Chicago Rock Island railway company contracted with Drs. J. P. Runyan, W. S. Britt, and other doctors (collectively known as St. Luke's Hospital Clinic) for the clinic to provide surgical and medical attention to the company's employees. While assisting Dr. Runyan during a surgery, Britt sustained an injury to her eye as a result of Runyan's negligence. Britt sued both Runyan and Chicago Rock Island, and the jury returned a verdict against both Runyan and the railway company. In affirming the vicarious liability award against the company, this court set out the details of the parties' contract and their relationship. The *Britt* court concluded the jury was warranted in finding that the railway company was in complete control of the hospital and Dr. Runyan. In this connection, I need not relate all the evidence discussed by the court but I would point out that, under the contract, the railway company's chief surgeon, S. C. Plummer, had the

authority to order, direct and regulate Dr. Runyan.

The majority opinion, by citing the dissent in the *Britt* case, seems to infer that that holding reversed *Runyan*. I thoroughly disagree. While the *Britt* decision is quite detailed and, perhaps convoluted, at times, the court clearly stated that the evidence provided a fact question that a master-servant relationship existed between the parties, and that, based upon the control the railway company exercised over Dr. Runyan and the hospital, Britt's vicarious liability award against the company was proper.

In the present case, appellees failed to show that an employee/employer relationship existed between Dr. Eades and Medi-Stat. The burden, in this respect, was appellees', *see* AMI 207, and appellees offered no evidence whatsoever on this issue.

The majority opinion does recite evidence the appellees presented below, but none of it pertains to proving an employer/employee relationship. Instead, it seems directed more at showing Medi-Stat was liable based upon an "ostensible agency" or "apparent authority" theory. In this regard, the majority relates that the decedent's mother scheduled appointments with Medi-Stat (and not a particular doctor) and that the treating doctor was merely the one present at the time of the appointment. It also notes that the clinic's records and billings bore the name of Medi-Stat with no mention of a physician. Again, none of these factors bear on whether Dr. Eades was an employee of Medi-Stat. If the majority recites these matters to support Medi-Stat's liability under some other theory, such as apparent authority, it fails to say so.

In any event, I believe Arkansas law, as noted above, is quite clear as it bears on whether Medi-Stat should be liable for Dr. Eades' negligence under the circumstances and evidence presented in this case. In my view, the law requires the judgment against Medi-Stat to be reversed.

DUDLEY and NEWBERN, JJ., join this opinion.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
NOVEMBER 12, 1990

798 S.W.2d 438

1. PLEADING — ALLEGATION OF COMPLAINT NOT SPECIFICALLY DENIED IS TAKEN AS ADMITTED. — An allegation of a complaint not specifically denied is taken as admitted.
2. PHYSICIANS & SURGEONS — MASTER/SERVANT RELATIONSHIP. — When it is shown that the person causing the injury was, at the time, rendering a service for the defendant and being paid for that service, and the facts presented are as consistent with the master/servant relationship as with the independent contractor relationship, then the burden is on the one asserting the independence of the contract to show the true relationship of the parties; where the testimony showed that the deceased saw whichever doctor was on duty at the clinic at the time of his visit and that all of the records of the clinic relative to the deceased bore only the clinic letterhead and all billing and payment were between the clinic and the patient, the factual issue was brought within this rule.

Petition for Rehearing; denied.

*Friday, Eldredge & Clark*, by: *C. Tab Turner*, for appellants.

*Charles Hicks*, for appellees.

SAM ED GIBSON, Special Justice. In its petition for rehearing Medi-Stat insists that our opinion of July 9, 1990, affirming the judgment awarded against the appellants, overlooks the appellees' failure to produce "*any* evidence at trial that Medi-Stat exercised control over the physicians in hiring and firing, the setting of work schedules and salary, the right to select the patients to be treated, or the method of treatment."

We recognize that the emphasis of our opinion was given to a discussion of the cases of *Runyan* v. *Godrum*, 147 Ark. 481, 228 S.W. 397 (1921), and *Arkansas Midland R.R. Co.* v. *Pierson*, 98 Ark. 399, 139 S.W. 917 (1908), but that was because the primary thrust of appellant's argument, in reliance on those cases, was that medical doctors cannot be employees as a matter of law so as to give rise to vicarious liability under the doctrine of respondeat superior. We examined that issue and considered it in depth in our earlier opinion. We will not reexamine it here.

Appellant did argue that appellees failed to meet their burden of proving that Dr. Eades was the agent or employee of Medi-Stat (citing AMI 207) and to directly answer that argument, we issue this supplemental opinion.

Appellant asserts that appellees' complaint alleged that Medi-Stat was the employer of, and vicariously responsible for, Dr. Eades and that Medi-Stat denied that Dr. Eades was the employee of Medi-Stat. We do not find that to be so. Paragraph one of the complaint alleges that, "The defendant, Dr. Michael Eades, at all times relevant hereto, was a licensed practicing physician working as an agent or employee for Medi-Stat Medical Clinic, Inc., an Arkansas Corporation." The answer nowhere specifically denies that allegation. The only relevant response reads, "The defendants admit that Dr. Michael Eades was a licensed practicing physician working at Medi-Stat Medical Clinic, Inc., an Arkansas Corporation." An allegation of a complaint not specifically denied is taken as admitted. *Meek* v. *U.S. Rubber Tire Co.,* 244 Ark. 359, 425 S.W.2d 323 (1968). Rule 8(b) of the Arkansas Rules of Civil Procedure reads in part:

> A party shall state in ordinary and concise language his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and shall deny only the remainder.

Even if it could be said the agent/employee issue was joined by the pleadings, we think Ms. Kusturin's testimony that Timothy saw whichever doctor was on duty at the clinic at the time of his visit and that all of the records of Medi-Stat relative to Timothy Cowan bear only the Medi-Stat letterhead and all billing and payment were between Medi-Stat and the patient, brought the factual issue within the purview of *Schuster's Inc.* v. *Whitehead,* 291 Ark. 180, 722 S.W.2d 862 (1987):

> [W]hen it is shown that the person causing the injury was, at the time, rendering a service for the defendant and being

paid for that service, and the facts presented are as consistent with the master/servant relationship as with the independent contractor relationship, then the burden is on the one asserting the independence of the contract to show the true relationship of the parties. 722 S.W.2d at 864.

This disputed issue, it should be remembered, arises from the denial of Medi-Stat's motion for a directed verdict on the ground that there was no evidence that Eades was the agent or employee of Medi-Stat. In *Phillips Cooperative Gin Co.* v. *Toll*, 228 Ark. 891, 311 S.W.2d 171 (1958), we said:

The rule is well established that where fairminded men might honestly differ as to the conclusion to be drawn from facts, whether controverted or uncontroverted, the question should go to the jury. *St. L.I.M. & S. Ry. Co. v. Fuqua*, 114 Ark. 112, 169 S.W.786. It is also well established that it is proper to direct a verdict for the defendant only when, under the evidence and all reasonable inferences deducible therefrom the plaintiff is not — under the law —entitled to recover. *Wortz v. Ft. Smith Biscuit Co.,* 105 Ark. 525, 151 S.W. 691.

The petition for rehearing is denied.

GLAZE, J., dissent.

TURNER, J., not participating.

TOM GLAZE. Justice, dissenting. The majority is mistaken when, in its opinion, it states the appellants failed to deny appellees' allegation that Dr. Eades was an agent or employee for Medi-Stat Medical Clinic, Inc. In fact, appellants worded their answer to appellees' complaint very carefully to say only that "Dr. Michael Eades was a licensed practicing physician *working* at Medi-Stat." Such language obviously is broad enough to include Dr. Eades as working in the capacity of an independent contractor. In paragraph 11 of their answer, they further denied "all remaining allegations" — a denial which clearly would have included the appellees' claims that Dr. Eades was an agent or employee of the clinic. In fact, to conclude otherwise would mean that a general denial is meaningless, and unless a defendant specifically denied each allegation of a complaint, he or she will be

charged with having admitted them. In addition to the parties' pleadings, one need only review the pretrial discovery and the evidence and arguments at trial to know that the agency and employment issues were contested throughout this litigation.

I further should note that I parted from the majority's earlier opinion when it held Medi-State vicariously liable for Dr. Eades's negligence. The majority listed some six factors to support its view on this issue and now attempts to shore up its position by mentioning the parties' pleadings as discussed above.

In addition to disagreeing with its view of the pleadings, I take slight exception to how two of the six factors were described in the majority's earlier opinion. For example, the majority opinion concluded the clinic chose the physician who treated Mr. Cowan when, in fact, no evidence was offered by anyone as to how physicians were assigned to patients. The majority opinion also mentioned that none of the medical records contained a disclaimer or other indication that Medi-Stat is not the medical care provider or that its physicians were not employees of Medi-Stat. While it is clear that agency may not be proved by declarations, actions or inactions of a purported agent, here the lack of a disclaimer or the medical chart was never mentioned at trial; nor was there a law that required such a disclosure.

In sum, I wish to reiterate my earlier view that the appellees clearly failed to show a employee/employer relationship between Dr. Eades and Medi-Stat and to the extent vicarious liability was not shown, I believe the judgment obtained against Medi-Stat should be set aside.