*Lolita D. Fowlkes v. Shabbir Ahmed Choudhry*, No. 6, September Term, 2020. Opinion by Battaglia, J.

**WRONGFUL DEATH — DAMAGES — PROOF OF PECUNIARY LOSS —**

The Court of Appeals held that, in order for a parent of a deceased adult to recover pecuniary damages for household services under Maryland's Wrongful Death Act, Sections 3-901 to 3-904 of the Courts and Judicial Proceedings Article, the parent must present evidence not only that they reasonably expected to receive services from the adult child but that the adult child intended to continue providing services.

Circuit Court for Baltimore City
Case No.: 24-C-16-001919
Argued: October 1, 2020

IN THE COURT OF APPEALS
OF MARYLAND

No. 6

September Term, 2020
_____

LOLITA D. FOWLKES

v.

SHABBIR AHMED CHOUDHRY
_____

Barbera, C.J.,
McDonald,
Hotten,
Getty,
Booth,
Biran,
Battaglia, Lynne, A.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Battaglia, J.
_____

Filed: March 26, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This Court granted certiorari in the present case to determine what must be proven in a wrongful death medical malpractice case in order for a parent to recover pecuniary, also referred to as economic, damages for the alleged loss of household services rendered by a deceased adult child to the parent, under the Wrongful Death Act, Sections 3-901 to 3-904 of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2013 Repl. Vol.).[1] *Fowlkes v. Choudhry*, 467 Md. 712 (2020).

The Petitioner, Ms. Lolita Fowlkes, asks that we reverse a judgment of the Court of Special Appeals that had vacated an award of $500,000 against Dr. Shabbir Choudhry, Respondent, by a jury in the Circuit Court for Baltimore City, for loss of household services, which she alleged she would have received from her adult daughter, Yenita Owens, who had died after having received medical treatment by Dr. Choudhry, among others.[2] The Court of Special Appeals, in a published opinion, *Choudhry v. Fowlkes*, 243

---

[1] We granted Ms. Fowlkes's petition for a writ of certiorari, limited to the following question:

> 1. Did the Court of Special Appeals err in its formulation and application of Maryland law regarding what a wrongful death plaintiff must prove in order to recover damages for the loss of household services that would have been provided by the plaintiff's deceased adult child?

*Fowlkes v. Choudhry*, 467 Md. 712 (2020). We denied Ms. Fowlkes's petition as to the following additional questions:

> 2. Did the circuit court err by refusing to take judicial notice of life expectancy tables?

> 3. Did the circuit court err by refusing to take judicial notice of Maryland's minimum wage law?

[2] Ms. Fowlkes, personally and in her capacity as the personal representative of the estate of her deceased daughter, Ms. Yenita Owens, along with her deceased daughter's father, Mr. Derrick Owens, filed a complaint in the Circuit Court for Baltimore City,

(continued . . . )

Md. App. 75 (2019), held that in a wrongful death action, a parent could recover economic damages for loss of household services, but that Ms. Fowlkes had not produced sufficient evidence to have the claim submitted to a jury, pursuant to Maryland Rule 2-519.[3] In so doing, the intermediate appellate court articulated a three-part "test" to

---

( . . . continued)
alleging negligence on the part of nine defendants: Maryland General Hospital, Inc., Shabbir-Ahmed Choudhry, M.D., Dilraj Deol, M.D., Anthony & Banerjee M.D., P.A., University of Maryland Medical System Corporation, University of Maryland Medical Center, LLC, University of Maryland Emergency Medicine Associates., P.A., Michael Bond, M.D., and Nina Galluzzo, CRNP.

The complaint included three causes of action including wrongful death, survival, and failure to obtain informed consent. On the first day of the trial, the court granted a motion for summary judgment in favor of University of Maryland Emergency Medicine Associates, P.A. and Michael Bond, M.D. At the close of Plaintiffs' presentation of evidence, the court dismissed the failure to obtain informed consent claim against all remaining defendants and granted motions for judgment in favor of Maryland General Hospital, Inc., University of Maryland Medical System Corporation, and University of Maryland Medical Center, LLC. Plaintiffs' claims against Anthony & Banerjee M.D., P.A. were subsequently dismissed by stipulation. Of the three remaining defendants, Dr. Choudhry, Dr. Deol, and Ms. Galluzzo, only Dr. Choudhry was found liable for the death of Ms. Fowlkes' daughter. In the wrongful death claim, the jury awarded damages against Dr. Choudhry to the plaintiffs in the amount of $1,000,000, which included $500,000 in non-economic damages and $500,000 in economic damages for lost services; Mr. Owens remains a plaintiff and may retain rights to a share of the non-economic damages under the Wrongful Death Act. In the survival claim, a jury awarded $1,544 in economic damages to the Estate of Ms. Owens for funeral expenses.

[3] Maryland Rule 2-519, entitled Motion for Judgment, provides:
(a) **Generally.** A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case.

(continued . . . )

2

evaluate claims for economic damages arising from the loss of household services performed for a parent by an adult child prior to her death. According to the intermediate appellate court:

> [A] beneficiary must: (1) identify domestic services that have a market value; (2) have reasonably expected the decedent to provide the identified services, which—absent the decedent's legal obligation to provide the services—will typically require evidence showing that the decedent was regularly providing the services in the past; and (3) present some evidence concerning the duration the decedent would have likely provided the services.

*Id.* at 86.

Application of the articulated "test" to the evidence presented by Ms. Fowlkes yielded a twofold concern for our brethren: the lack of "market value" evidence for the

---

( . . . continued)

(b) **Disposition.** When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.

(c) **Effect of Denial.** A party who moves for judgment at the close of the evidence offered by an opposing party may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the party withdraws the motion.

(d) **Reservation of Decision in Jury Cases.** In a jury trial, if a motion for judgment is made at the close of all the evidence, the court may submit the case to the jury and reserve its decision on the motion until after the verdict or discharge of the jury. For the purpose of appeal, the reservation constitutes a denial of the motion unless a judgment notwithstanding the verdict has been entered.

services, as well as the absence of proof "that Ms. Owens intended to continue providing the identified household tasks to her mother on a regular basis in the future", the latter being the basis for the Court's reversal of the judgment for the economic damages for household services. *Id.* at 101.

At trial, Ms. Fowlkes testified that she was seventeen years-old when her daughter was born and that she had raised her daughter as a single parent. Ms. Fowlkes stated that she and her daughter had lived together during her daughter's twenty-two years. The two of them had engaged in a variety of activities, by which they developed a very close bond, which, according to Ms. Fowlkes, "was more than a mother and a daughter." According to Ms. Fowlkes, she and her daughter were best friends.

Ms. Fowlkes also testified regarding household tasks that her daughter had performed, which, the parties agree was offered to support her claim for pecuniary damages related to lost household services:

> Q [MS. FOWLKES'S ATTORNEY]: And as Yunita [sic] got older, was she also -- was she helping you around the house at all?
>
> A Yes.
>
> Q And what type of things was she helping you with?
>
> A She would clean the bathroom. She would wash the dishes. She would mop the floor. She would vacuum.
>
> Q Are you able to drive?
>
> A No, I'm not, and she would drive me around.
>
> Q Okay. And where would she drive you to?
>
> A She would take me to Wal-Mart, Sam's Club.

Q Did Yunita [sic] have a car?

A No, she would use my cousin's car.

Q And how much time did she spend doing those things for you, on any given day?

A I'm going to say like two hours a day.

Q And I don't know if I've asked you this before, At the time of her passing, who were you living with?

A Yunita [sic].

Q Okay. Throughout Yunita's [sic] entire life, have you lived with her?

A Yes.

Q Okay. Was there ever a day in which you did not live with Yunita [sic]?

A No.

Q Did you have any expectation as to whether you were going to continue to live with Yunita [sic]?

A If I could live with her forever, then I was going to live with her forever.

What constitutes proof of loss under the Wrongful Death Act to support a pecuniary damage award to compensate for the loss of household services from an adult child, now deceased, to a parent and whether Ms. Fowlkes's testimony was sufficient to create a jury question regarding whether the loss of her daughter's services in the future was compensable constitute the crux of the case before us. We shall agree with the Court of Special Appeals that the evidence adduced by Ms. Fowlkes was insufficient to meet her burden of proof because proof of intent on the part of the deceased adult child to

continue to perform household services on behalf of the parent must be adduced, in addition to evidence of what the parent expected, to survive a directed verdict.

The Wrongful Death Act was originally enacted in 1852 in Maryland as "An Act to compensate the families of persons killed by the wrongful act, neglect or default of another person." Maryland Laws (1852), Chapter 299. The Act provided:

> [1] That whensoever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued), have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.
>
> [2] That every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused and shall be brought by and in the name of the State of Maryland, for the use of the person entitled to damages, and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought, and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before mentioned parties, in such shares as the jury by their verdict shall find and direct; Provided, always, that no more than one action shall lie for and in respect of the same subject matter of complaint; and that every such action shall be commenced within twelve calendar months after the death of the deceased person.
>
> [3] That in every such action, the plaintiff on the record shall be required, together with the declaration, to deliver to the defendant, or his attorney, a full particular of the person or persons, for whom and on whose behalf such action shall be brought, and of the nature of the claim, in respect of which, damages shall be sought to be recovered.

1852 Maryland Laws, Chapter 299. The statute and its evolution were summarized by

this Court in *McKeon v. State, for the Use of Conrad*, 211 Md. 437, 442 (1956) as:

> Prior to 1852, under the common law, Maryland permitted no recovery for pecuniary loss suffered by a relative of one killed by the negligence of another. In that year, the Legislature enacted Ch. 299 of the Acts of 1852, which provided an action at law for the benefit of a wife, husband, parent and child of a person whose death shall have been caused by the wrongful act, neglect or default of another, against the person wrongfully causing said death. The list of persons entitled to recover under the then Sec. 2 of the above Act, remained the same until 1937, when it was enlarged to permit recovery by the mother of an illegitimate child and by an illegitimate child when the deceased person was the mother of such child. In 1952, the Legislature again added to this list by including relatives of the deceased who met certain dependency qualifications, but only if there were no surviving wife, husband, parent or child.

In 1969, the General Assembly revised the Act to expand the type of damages

recoverable to include non-economic, or solatium, damages.

> In the case of the death of a spouse or minor child, the damages awarded by a jury in such cases shall not be limited or restricted to the "pecuniary loss" or "pecuniary benefit" rule, but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable.[4]

1969 Maryland Laws, Chapter 352.

---

[4] In *Carolina Freight Carriers Corp. v. Keane*, 311 Md. 335 (1988), Judge William H. Adkins, II explained that Section 4(b) of Article 67, Maryland Code (1967 Repl. Vol., 1969 Cum. Supp) contained a "defect" that "allowed recovery only for the death of a spouse or minor child although it included damages for loss of *parental* care and other lost *parental* benefits." (emphasis in original). The General Assembly "enlarged the recovery in 1975 to allow damages for the death of the 'parent of a minor child'." *Carolina Freight Carriers*, 311 Md. at 341 (quoting 1975 Maryland Laws, Chapter 120).

Under the Act, now codified as Sections 3-901 to 3-904 of the Courts and Judicial Proceedings Article, Maryland Code (1973, 2020 Repl. Vol.), a "wrongful act" is "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." Section 3-901(e). The statute allows for "an action to be maintained against a person whose wrongful act causes the death of another." Section 3-902(a). The statute defines a primary class of beneficiaries as "the wife, husband, parent, and child of the deceased person." Section 3-904(a)(1). Ms. Fowlkes and Mr. Owens, as parents of Ms. Owens, qualified under the statute to seek pecuniary and solatium damages.

Those provisions of the Wrongful Death Act most relevant to the present case, as they relate to damages, include:

> (c)(1) In an action under this subtitle, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death.
>
> (2) Subject to § 11-108(d)(2) of this article, the amount recovered shall be divided among the beneficiaries in shares directed by the verdict.
>
> (d) The damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable for the death of:
>
> (1) A spouse;
> (2) A minor child;
> (3) A parent of a minor child; or
> (4) An unmarried child who is not a minor child if:
> (i) The child is 21 years old or younger; or

(ii) A parent contributed 50 percent or more of the child's support within the 12-month period immediately before the date of death of the child.

(e) For the death of a child, who is not described under subsection (d) of this section, or a parent of a child, who is not a minor child, the damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable.

Sections 3-904(c-e).

The origins of the Wrongful Death Act in Maryland lie in the Fatal Accidents Act enacted in England in 1846.[5] *See Baltimore & Ohio R.R. Co. v. State, Use of Kelly*, 24 Md. 271, 281 (1866). The Fatal Accidents Act, more commonly known as Lord

---

[5] Fatal Accidents Act 1846, 9 & 10 Vict. c. 93 (Eng.). The Act provided:

§ 1. Whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

§ 2. Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executive or administrator of the person deceased; and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom, and for whose benefit, such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before mentioned parties, in such shares as the jury, by their verdict, shall find and direct.

9

Campbell's Act,[6] provided a cause of action by which a "wife, husband, parent, and child" could seek damages as a result of the death of a relative through the negligence of another.

English courts had occasion to address proof of damages under Lord Campbell's Act for losses sustained by a parent because of the death of an adult child who had been providing services to them. In *Franklin v. South Eastern Railway Co.*, 3 H & N 211 (1858), parents sought recompense for the death of their son in a train accident, as a result of the son having been giving his wages to his parents, from a second job delivering coal. The Railroad argued that the parents' loss of the son's contributions was not a basis for recovery under the statute. *Franklin*, 3 H & N at 212. The trial judge disagreed and had fashioned a question for the jury regarding whether the parents had a "reasonable expectation, if any, and what pecuniary benefit from the continuance of [the] son's life"; the jury had returned a verdict in the favor of the parents. *Id.*

On appeal, the Court of the Exchequer considered whether the parents were "entitled to maintain the action, it being contended that it was necessary the [parents] should shew a damage, and that [they] had shewn none." *Id.* at 213. The parents asserted that evidence of the father's inability to work and the amount of money the son had been providing were sufficient to prove a pecuniary loss. *Id.* The Railroad countered that the

---

[6] Lord Campbell's Act is the more common name for the Fatal Accidents Act. David K. Rees, Note, Blind Imitation of the Past: An Analysis of Pecuniary Damages in Wrongful Death Actions, 49 Denv. L.J. 99 (1972).

son's "assistance . . . was a mere act of kindness, which might have been discontinued at any time." *Id.* According to the Railroad, because the parents had no legal right to the money they had been receiving from their son, they had not suffered a loss that was compensable under Lord Campbell's Act. *Id.*

The Court disposed of the Railroad's contention that recovery under the Act was contingent on proof that the death resulted in a deprivation of a "legal right," when Judge Pollock stated:

> damages are not to be given merely in reference to the loss of a legal right, for they are to be distributed among relations only, and not to all individuals sustaining such a loss, and accordingly the practice has not been to ascertain what benefit could have been enforced by the claimants, had the deceased lived, and give damages limited thereby.

*Id.* at 214. The Court held, rather, that damages could be awarded "in reference to a *reasonable expectation* of pecuniary benefit, as of right or otherwise, from the continuance of the life." *Id.* (emphasis added).

The Court, turning to the evidence, considered "[w]hether the plaintiff had any such reasonable expectation of benefit from the continuance of his son's life, and if so, to what extent[?]" *Id.* In concluding that the parents had provided sufficient proof of a reasonable expectation of pecuniary benefit, the Court emphasized that the father was "old and infirm," as well as that the son, though living away from his parents, was "earning good wages" in his two jobs and had demonstrated a commitment to caring for his parents, noting that the son was "apparently well disposed to assist his father and, in fact he had so assisted him to the value of 3s. 6d. a week." *Id.* at 214.

11

A companion case, *Dalton v. South Eastern Railway Co.*, 4 C. B. (N. S.) 296 (1858), arose from the same train accident that resulted in the death of the son in *Franklin*; it also was a claim for pecuniary benefits put forth by the parents of a deceased adult child. At trial, the parents presented evidence that the decedent was twenty-six or twenty-seven years old when he died and had, since moving away from them seven or eight years earlier, visited the parents every two weeks, "and on those occasions took them presents of tea, coffee, sugar, meat, &c., which with occasional donations of money averaged about 20 [pounds] a year." *Dalton*, 4 C. B. (N. S.) at 298. The Railroad advanced the same argument that it had in *Franklin*: the parents had not sustained a pecuniary loss by virtue of the fact that their son was under no obligation to provide support to his parents. The trial judge had instructed the jury that "the plaintiff and his wife had sustained a pecuniary injury from the death of their son as to entitle them to recover damages under the statute[,]" and the jury returned an award of 120 pounds in expectation damages, as well as 10 pounds for funeral expenses, and 15 pounds for "mourning." *Id.* at 299.

On appeal, the Railroad argued that, "[s]ince the passing of the statute, no intelligible rule has been laid down for the computation of damages[.]" *Id.* at 304. According to the Railroad, Lord Campbell's Act "contemplates a 'recompense' for the loss of profit arising from some legal obligation." *Id.* at 305. As the son had been under no legal obligation to provide goods and money to his parents, the Railroad asserted that

12

the parents had not suffered a pecuniary loss of the type that was compensable under Lord Campbell's Act.

In rejecting the Railroad's argument, the *Dalton* Court held "that the reasonable expectation of pecuniary advantage by the relation remaining alive may be taken into account by the jury, and damages may be given in respect of that expectation being disappointed, and the probable pecuniary loss thereby occasioned." *Id.* at 305-06. The Court concluded that the parents could not recover for funeral expenses and "mourning," but affirmed the award of expectation damages. *Id.* at 306. The emphasis of the Court during argument was that the emancipated son had, for seven or eight years, "been in the regular habit of contributing to the support of his parents." *Id.* at 304. As in *Franklin v. South Eastern Railway Co.*, the Court emphasized the undertaking of the deceased adult son, living on his own, in caring for his parents.

This Court has relied on *Franklin* and *Dalton* in several cases in which we considered the award, or denial, of pecuniary damages under Maryland's Wrongful Death Act. In *Baltimore & Ohio Railroad Co. v. State, Use of Hauer*, 60 Md. 449 (1883), Mr. Hauer was killed in a train accident and the State brought a wrongful death action against the Railroad, on behalf of his children, two of whom were unmarried adult women living with and being supported by their father prior to his death. Before us, the Railroad argued that the adult daughters could not recover under the Wrongful Death Act, because, by virtue of their age, they had no legal entitlement to their father's support. *Hauer*, 60 Md. at 466.

13

We began our analysis by noting that Maryland's statute was based on Lord Campbell's Act and that the English statute made "no reference to the age or condition of the parties, but it simply provides for damages 'proportioned to the injury resulting from such death to the parties' for whom suit may be brought." *Id.* (quoting Lord Campbell's Act). We then summarized English cases interpreting Lord Campbell's Act:

> [I]n those cases it is distinctly held that "legal liability alone is not the test of injury, in respect of which damages may be recovered under the statute; but that the reasonable expectation of pecuniary advantage by the relative remaining alive may be taken into account by the jury, and damages given in respect of that expectation, if it be disappointed and the probable pecuniary loss thereby occasioned."

*Id.* at 467 (quoting *Dalton*). With respect to the children's claim in the case before it, the Court concluded that, under the reasonable expectation of pecuniary benefit standard, "the children may recover for the loss of education, comforts, and position in society, which they would have enjoyed if their father had lived and retained the income which died with him, and they had continued to form part of his family." *Id.*

In *Baltimore & Ohio Railroad Co. v. State, Use of Mahone*, 63 Md. 135 (1885), an adult daughter and two adult sons sued for pecuniary losses they averred had resulted from the death of their mother in another train accident. *Mahone*, 63 Md. at 145.

At trial, the adult daughter established the following:

> [T]he proof shows that the deceased made her permanent home with her daughter Martha, . . . that she attended to the housework and looked after the children while the daughter was away at work; that these services enabled the daughter to work out constantly, and when so at work she earned $6 a week, and that since her mother's death she had not been able

14

to go out and work, because she had no one to take care of the house and children.

*Id.* at 145-46. The two sons had asserted that they, too, had suffered pecuniary losses, because the mother had periodically provided childcare to their children: "The[ir] mother, although she made her home with her daughter Martha, was in the habit of assisting in nursing the sick members of her two sons' families." *Id.* at 147.

In determining that the evidence of the daughter's loss was sufficient to go to the jury, we emphasized that:

- The mother, who was a widow, had moved in with her daughter and her family more than three years before her death.[7]

- The mother performed domestic services for the daughter, including housework and meal preparation.

- The mother attended to the daughter's children while the daughter worked outside the home to earn approximately six dollars per week.

- The daughter had not worked outside the home since her mother's death, because she had to assume the domestic and childcare responsibilities, which had been previously rendered by the mother.

In determining that the sons' evidence was insufficient, we noted that:

---

[7] The jury instruction that had been requested by the Railroad, which is reproduced in the opinion, *Baltimore & Ohio Railroad Co. v. State, to Use of Mahone*, 63 Md. 135, 139 (1885), provided, in relevant part: "the mother of the plaintiffs, . . . for more than three years prior to the happening of the accident . . . which it is alleged caused her death, made her home with the said Thomas R. and Martha E. Mahone[.]"

15

- The mother was "in the habit" of assisting in nursing the sick members of the families of the two sons.

- The frequency of her visits, the length of time of the visitations, and their value were not proven.

- The sons had not employed anyone else to take their mother's place since her death.

Essentially, then, evidence of the daughter's expectation, "anchored" in proof of intent by the acts of her mother, who moved in with the daughter and performed household services, was sufficient to send the question of damages to the jury, but "habit" evidence was not.

In *State, for Use of Bowman v. Wooleyhan Transport Co.*, 192 Md. 686 (1949), we considered a case in which the legal issue and facts were reminiscent of the daughter's claim in *Mahone*. During the trial, the daughter, who was blind, testified that:

> her mother visited her home every day and when the mother was not working at times she cleaned the house for her, cleaned windows, took care of the children, "she took them places, when they had to go, she did washing, ironing for me, sewing and mending, and a lot of times she cooked for me and then she took me places, where it required going across the street or required taking buses or street cars or anything else that required sight."

*Bowman*, 192 Md. at 690. Additionally, the daughter testified that after her mother's death, she had employed a "servant to perform the services the mother performed." *Id.* at

691. The trial court granted a demurrer,[8] on the grounds that the plaintiff had provided "no legally sufficient evidence . . . to warrant the Jury in finding that she had sustained any pecuniary loss, actual or in expectation, from the death of her mother, and the verdict, therefore, must be for the defendant." *Id.* at 688-89. In affirming the trial court's grant of the demurrer, we began our analysis by noting:

> In this case we find that the mother did not live in the home with her daughter, as in the case of *B. & O. v. Mahone*, *supra*, but was employed a great part of the time elsewhere. The services rendered were those naturally rendered by an affectionate employed mother to her daughter.

*Id.* at 694. In concluding that the loss of the mother's services did not constitute a pecuniary loss to the daughter, we emphasized evidence that suggested reciprocity

---

[8] In *Maryland-National Capital Park and Planning Commission v. Town of Washington Grove*, 408 Md. 37, 94 n. 28 (2009), we explained a demurrer and its modern-day incarnation:

> At common law, the demurrer was a procedural pleading filed by defendants seeking to have a plaintiff's complaint dismissed for some legal deficiency affirmatively appearing in the complaint. . . . Maryland Rule 2-322(b)(2), providing for the defense by motion to dismiss for failure to state a claim upon which relief can be granted, is the modern equivalent of the demurrer.

(citations omitted). Maryland Rule 2-322(b) provides:

> The following defenses may be made by motion to dismiss filed before the answer, if an answer is required: (1) lack of jurisdiction over the subject matter, (2) failure to state a claim upon which relief can be granted, (3) failure to join a party under Rule 2-211, (4) discharge in bankruptcy, and (5) governmental immunity. If not so made, these defenses and objections may be made in the answer, or in any other appropriate manner after answer is filed.

17

between daughter and her mother, namely, that the daughter had periodically provided to her mother benefits, in the form of "meals, money, food, and payment of rent[.]" *Id.* at 695.

In support of her interpretation of the concept of "reasonable expectation of pecuniary benefit" Ms. Fowlkes appears to be suggesting that her expectation coupled with evidence of "habit" on the part of the child are sufficient to establish proof of pecuniary damages under the Wrongful Death Act. According to Ms. Fowlkes, the Court of Special Appeals was incorrect in requiring evidence of a decedent's intent, because, according to her, recovery under the reasonable expectation standard is determined by evidence of the beneficiary's expectation. Ms. Fowlkes argues that requiring evidence of a decedent's intent "will likely be impossible for plaintiffs to satisfy in many cases."

Dr. Choudhry, apparently, suggests that a claimant under the Wrongful Death Act must provide evidence that is "clear" that services rendered by a decedent were not done so gratuitously, hinting that, in the context of pecuniary damage claims for lost household services, "reasonable certainty" requires more than proof by a preponderance of the evidence. Dr. Choudhry also asks that we hold that proving damages with "reasonable certainty" necessarily requires a plaintiff to present expert testimony on the value of the decedent's services.[9] From both perspectives of the law, we demure.

---

[9] This Court, in *Fennel v. Southern Maryland Hospital Center, Inc.*, 320 Md. 776, 791 (1990), explained that damages in tort cases "must be proven by a preponderance of the evidence." We decline Dr. Choudhry's request to apply a heightened evidentiary

(continued . . . )

18

We review a lower court's interpretation of the law under a *de novo* standard of review, by which "we accord no deference to the lower [court's] decisions here." *Beall v. Holloway-Johnson*, 446 Md. 48, 76 (2016). The judge's ruling on a motion for judgment requires that we review all evidence and inferences made in the light most favorable to the party against whom the motion was made. Maryland Rule 2-519(b).

Contract principles of expectation damages generally emphasize "the realization of reasonable expectations that have been induced by the making of a promise." Arthur Corbin, CORBIN ON CONTRACTS § 1.1 (rev. ed. 1993). As we explained in *Sloane v. Stanley G. House & Assocs., Inc.*, 311 Md. 36, 42 (1987), a party injured by a breach of contract "has a right to damages based on his expectation interest[.]" (quoting Restatement (Second) of Contracts, § 347 (Am. Law Inst. 1981)). Proof of expectation damages or "pecuniary loss" in the future, in a contract case, thus, would require proof that the injured party suffered a loss, which was caused by the other party's failure to perform its obligation under the contract. *Id.*

In various areas of the law, the concept of "expectation" has had a complicated and checkered development, such as in products liability cases, where the consumer expectation test has been an "utter failure." *See* David G. Owen, Expectations in Tort, 43 Ariz. St. L.J. 1287, 1306 (2011). In corporate law, in order "to determine whether a

---

( . . . continued)
standard to a pecuniary damage claim for lost household services in a wrongful death claim.

19

majority shareholder's misconduct vis-a-vis a minority shareholder has been so severe as to trigger the possible demise of the corporation, a court measures that conduct against the 'reasonable expectations' of the minority shareholder when the minority shareholder obtained his or her interest in the company." *Bontempo v. Lare*, 444 Md. 344, 365 (2015). In criminal law, cases are legion that explore the reasonable expectation of privacy issue. *See, e.g.*, *Laney v. State*, 379 Md. 522 (2004). In real property, a tenant's liability in a subrogation action is determined by examining "the lease as a whole, along with any other relevant and admissible evidence," to determine the reasonable expectations of parties to the lease. *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 713 (2005).

Rather than go down the "rabbit hole" of trying to reconcile the various "reasonable expectation" standards, we need only look at the English antecedents and our case law to interpret "reasonable expectations of pecuniary benefits" as well as cases from other states with similar wrongful death statutes.

What we have distilled from our review of the cases is that any pecuniary loss claim involving reasonable expectation damages begins with the question of what a beneficiary could reasonably expect from the decedent.[10] In *State, Use of Coughlan v.*

---

[10] We, of course, agree with the Court of Special Appeals that to award pecuniary damages, the household services under scrutiny must be capable of valuation. In *United States v. Searle*, 322 Md. 1, 7 (1991), we had occasion to explore the nature of household services, which may be subject to a claim for pecuniary damages in a wrongful death action:

(continued . . . )

*Baltimore & Ohio Rail Road Co.*, 24 Md. 84 (1866), the widowed mother of a twelve-year-old boy, who was killed in a train accident, sought damages under the Wrongful Death Act. At trial, the mother, who operated a grocery store, presented evidence that her son "t[ook] care of the store when she went away." *Coughlan*, 24 Md. at 87, and that the value of the son's services was "$5 to $6 per month." *Id.* at 88.

Although the mother sought damages for loss of services beyond the son's age of majority, the trial court had instructed the jury that it could award "adequate compensation for the loss of her son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years." *Id.* at 95. On appeal, we affirmed the trial court's limitation of damages to the period of the son's minority, explaining that, "[t]he law entitles the mother to the services of her child during minority only[.]" *Id.* at 107. We have affirmed repeatedly the premise of our holding in *Coughlan*, that a parent, being entitled to the services of a deceased minor child, does not have a legally cognizable interest under the Wrongful Death Act, based solely on the assumption that the child would have continued to provide the services after reaching

---

( . . . continued)

> The element of damages referred to as "household services" can have both pecuniary and nonpecuniary aspects. Where a claim is made for the nonpecuniary aspect of household services, the award may overlap the claim for solatium damages. But where an award for household services is compensation for the loss of domestic services and is based on the market value of those lost services, the award is pecuniary and is not duplicative of the solatium damages. These are services that can be performed by domestic workers and their replacement value is measured by prevailing wage rates for such services.

adulthood, because under the statute the parents were entitled only to the son's services during his minority. *See Agricultural & Mechanical Ass'n of Washington Cty v. State, to Use of Carty*, 71 Md. 86 (1889); *State, For Use of Strepay v. Cohen*, 166 Md. 682 (1934); *see also Emp'rs Liab. Assurance Corp., For Its Own Use and to Use of Jones*, 173 Md. 238 (1937).

Thus, assumptions of continuation, especially in the case of the death of an adult child, may be idealistic but not legally cognizable. As Chief Judge Richard Bowie said in *Coughlan*, albeit harshly, when addressing this issue:

> According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age; the one craving sympathy and support, the other rendering reverence, obedience and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss.

*Coughlan*, 24 Md. at 107-08. Expectations held by a beneficiary, thus, must be reasonable in light of the context of the case, rather than based on assumption of continuation.

Reasonableness of the beneficiary's expectation, though, is not only limited to that which is legally cognizable, but also must be "anchored" by proof that the adult child had intended to continue providing the services under scrutiny. An adult child's intent may be proven by legal obligation, but may also be satisfied by evidence of a written or verbal promise to provide services or by evidence of actions taken by the decedent from which their intent may be inferred.

22

Under the Wrongful Death Act, evidence of entitlement to the decedent's services or support has been held sufficient to sustain a claim for damages. The fact that the beneficiary is legally entitled to the decedent's support satisfies the need to provide evidence of the decedent's intent to continue such support. In *Hauer*, the jury was instructed, at the request of the Railroad, that the two adult daughters of a man who died in another railroad accident were not entitled to damages "unless the jury shall further find that said adult plaintiffs were dependent upon their said father for support and maintenance by reason of some want of ability to support and maintain themselves."[11] *Hauer*, 60 Md. at 457. On appeal, the Railroad renewed its argument that the adult children were not entitled to damages under the Wrongful Death Act. In rejecting the Railroad's argument, we reviewed English precedent related to Lord Campbell's Act and concluded that "the children may recover for the loss of education, comforts, and position

---

[11] The proffered jury instruction, in its entirety, provided:

That a father is under no legal obligation to support and maintain his children, who are above the age of twenty-one years, and if, under the instructions of the court, they shall find for the plaintiffs, and shall also find from the evidence that Willimina and Henrietta Hauer, two of said equitable plaintiffs, at the time of their father's death, were above the age of twenty-one years, then in estimating the damages sustained by the equitable plaintiffs by the death of their father, Luther M. Hauer, the jury must exclude from their consideration any claim for damages on the part of said adult plaintiffs, unless the jury shall further find that said adult plaintiffs were dependent upon their said father for support and maintenance by reason of some want of ability to support and maintain themselves.

*Baltimore & Ohio R.R. Co. v. State, to Use of Hauer*, 60 Md. 449, 456-57 (1883).

23

in society, which they would have enjoyed if their father had lived and retained the income which died with him, *and they had continued to form part of his family*." *Id.* at 467 (emphasis added). Thus, the father's legal obligation to provide support due to the financial dependency of his adult daughters presaged the award of pecuniary damages.

In *Baltimore & Ohio Railroad Co. v. State, to Use of Chambers*, 81 Md. 371 (1895), the family of a man killed in a train accident recovered under the Wrongful Death Act. The man had been estranged from his wife who "testified that she had not seen or held any communication with him for a period of from two to three years prior to his death." *Chambers*, 81 Md. at 372. The Railroad argued that the man's family was entitled to nominal damages only, due to the fact that evidence had been produced that suggested the man "had been separated from his family for a period of about 12 years immediately preceding his death, and that he had contributed nothing to the support of his wife or infant child during that period[.]" *Id.* at 375. We rejected the Railroad's argument based on the fact that the wife was legally entitled to support:

> The marital relation still continued to exist between the parties at the time of the death of the husband, and while they had not, for the period stated, lived together as man and wife, her legal rights had suffered no change or impairment. It is very clear from the testimony in the record that the wife had not by her own wrong forfeited her right to a decent support from her husband in accordance with her station in life. The marital relation created this right, and it continued to exist in law to the death of the husband, and this, too, without reference to the will or wishes of the husband.

*Id.* Similarly, in *Davidson Transfer & Storage Co. v. State, for Use of Brown*, 180 Md. 63 (1941), this Court, citing *Chambers*, 81 Md. 371, held that the fact that the mother of a

24

minor child had not "furnished her infant son any support or maintenance" in the four-months prior to her death, did not diminish the child's legal entitlement to support from the mother and ergo, to a pecuniary damage award under the Wrongful Death Act. *Brown*, 180 Md. at 73.

In the absence of legal entitlement, proof of a decedent's intent to provide services in the future could be adduced through evidence of a written or oral promise to do so. In *Ory v. Libersky*, 40 Md. App. 151 (1978), the Court of Special Appeals considered an appeal of a pecuniary damage award, under the Wrongful Death Act, to the children of a deceased man that was based, in part, on evidence that the man, who had been divorced from the children's mother, had agreed, in a separation agreement, to contribute to the children's future expenses. The separation agreement provided that, "the father would contribute $15 per week as child support and share the medical expenses until each child attained the age of 21 years." *Ory*, 40 Md. App. at 157. The agreement also provided: "The parties hereto further agree that they will share equally in expenses of higher education of any of said three children in the event they desire to continue their education beyond high school." *Id.*

In rejecting the Appellant's argument that the separation agreement was not probative that the children had a reasonable expectation of the father's contribution to their education, our intermediate appellate court explained that, "the test of the propriety of an award of damages for loss of educational benefits is . . . the existence or not of a reasonable expectation on the part of the child or children[.]" *Id.* The court concluded that

25

the trial judge had correctly instructed the jury that the separation agreement was "a piece of evidence for you to consider as to what the father would have done, or was likely to do, or would probably do for his three children had he lived." *Id.*

With respect to oral promises, courts in our sister jurisdictions have affirmed the admissibility of such to prove intent on the part of a decedent in Wrongful Death cases. In *Pennsylvania Railroad Co. v. Adams*, 55 Pa. 499 (1867), the parents of their deceased adult son sought to prove that their son had told a third party that he intended a $500 bounty for his enlistment in the army to go to them. *Adams*, 55 Pa. at 503. The Supreme Court of Pennsylvania upheld the trial court's admission of the witness's testimony, explaining that "[t]he arrangement which the deceased had made to send his bounty-money to his father was evidence on the question of the continuance of the relation between the son and his parents, and the expectancy of support by them in the future from him." *Id.*

In *Medi-Stat, Inc. v. Kusturin*, 303 Ark. 45 (1990), the Supreme Court of Arkansas considered whether the mother of an adult man, who died as a result of medical negligence, could recover damages under that State's Wrongful Death Statute, which according to the Court, recognized a parent's right to recover based on "a reasonable expectation of pecuniary benefit from the continued life of the child." *Kusturin*, 303 Ark. at 50 (citing *Fordyce v. McCants*, 51 Ark. 509 (1889)). Prior to his death, the son had entered into an oral agreement with his mother that, "[w]hen the mother enrolled in college, . . . he would work to contribute to the family income to enable her to finish her

26

education." *Id.* According to the Court, evidence of the son's agreement with his mother, contributed to the "substantial evidence from which the jury could have found a reasonable expectation." *Id.*

In *Lang v. Bouju*, 245 A.D.2d 1000 (1997), a New York appellate Court affirmed a damage award to the parents of a deceased twenty-two-year-old man, who had resided with them. Evidence not only reflected extensive work that the decedent had undertaken on the family's property but that the family was aware of the son's intent to go into the farming business with his father. *Lang*, 245 A.D.2d at 1002. Based on this evidence, the Supreme Court, Appellate Division, concluded that "it was not unreasonable for the jury to infer that he would stay in the area and continue providing for his parents in the future." *Id.*

Intent of a decedent also may be proven by evidence of their actions. In *Mahone* we emphasized that the mother's acts of moving in with and making her permanent residence with her daughter and then undertaking housekeeping and childcare services gave rise to the daughter's reasonable expectation of pecuniary benefit from the continuation of her mother's life. *Mahone*, 63 Md. at 146. Although the mother had also provided services to her two sons, we concluded that evidence that the mother "was in the habit of assisting in nursing the sick members of her two son's families" was insufficient to prove a pecuniary loss. *Id.* at 147.

Our brethren in other jurisdictions have held that evidence of a decedent's acts was sufficient to prove intent in Wrongful Death cases so as to support a reasonable

expectation of pecuniary benefit. In yet another Pennsylvania case, *Schnatz v. Philadelphia & Reading Railroad Co.*, 160 Pa. 602 (1894), three adult daughters of a deceased woman sought damages for the loss of their mother's support under that State's Wrongful Death Statute. *Schnatz*, 160 Pa. at 607 (citing *Adams*, 55 Pa. 499 (1867)). At trial, the daughters, each of whom had left home and were living apart from their mother, presented evidence that their mother had not charged them for providing them room and succor, as well as food, when they needed them:

> [One daughter] generally went to her mother's home, about three months, during the summer, and while there paid no board[. T]here was evidence that for some years [that a second daughter] had suffered from a pulmonary disease, and had each summer gone to the mother, . . . for the benefit of her health, and remained there for two or three months; that at times, in the winter, when ill, her mother had come to Philadelphia, and stayed with her, doing such household work as was required for her sick daughter; further, that she charged nothing for boarding this daughter at Phoenix Park, or for the service rendered her in Philadelphia. [F]or 16 years before her death, the mother, in autumn and spring, had given [a third daughter] potatoes for consumption in the house, and had nursed her at times during illness, and had made no charge for either.

*Schnatz*, 160 Pa. at 605.

A jury rendered a verdict in favor of the daughters, and the Railroad appealed. On appeal, the Railroad argued that the contributions of the mother to the daughters amounted to "occasional gifts and favors, and therefore there could be no reasonable expectation of pecuniary advantage." *Id.* at 609. In affirming the judgment, the Pennsylvania Court concluded that the daughters had provided sufficient evidence to prove that they had a reasonable expectation of pecuniary benefit from the continuance of

28

their mother's life, because the daughters' evidence "tended to show a persistent regularity of contribution for many years,–so regular and unvarying as to justify a reasonable expectation of continuance." *Id.* at 608-609. Additionally, the Court found persuasive the nature of the mother's contributions to her daughters: "Nor were these gifts and services, in view of the ability of the mother, and the necessities of the children, of trifling value. They must have very appreciably contributed to the comfort and health of those who were favored by them." *Id.* at 609. The acts of the mother in committing to the care of the daughters, to whom, as adults, she had no legal duty, without recompense constituted sufficient proof of a reasonable expectation.

In *St. Louis & Santa Fe Railway Co. v. French*, 56 Kan. 584 (1896), the Supreme Court of Kansas concluded that a widow, who was the mother of a deceased man, could recover damages under that State's Wrongful Death Statute, based on evidence that the man returned home to care for his mother for ten years. The Kansas Court summarized the evidence on which the award was based: "At the date of his death, Frank French was 34 years of age, . . . and was a single man, earning $60 to $75 per month, and he had resided with and wholly supported his mother for 10 years." *French*, 56 Kan. at 586.

In *Rival v. Atchison, Topeka & Santa Fe Railway Co.*, 62 N.M. 159 (1957), the mother of a deceased twenty-six-year-old man, who died while working for a railroad, recovered pecuniary damages for the loss of her son. The man, who had previously served in the military, had lived in his parents' home for approximately six months before

29

his death and had committed to contributing to the family's welfare. *Rival*, 62 N.M. at

161. According to the Court,

> It was decedent's common practice to turn over his earnings to his mother for family use. . . . From his earnings, a car had been purchased and the title was in the names of both his mother and himself. He had purchased a part of the furniture in his parents' home, and a small business had been established with money earned by him.

*Id.* The claim, brought under the Federal Employer's Liability Act,[12] was evaluated under

the "reasonable expectation of pecuniary benefit" standard, by which the New Mexico

---

[12] The Federal Employers' Liability Act provided:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
> 
> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

45 U.S.C. § 51 (1952).

(continued . . . )

Court concluded that the parents had a reasonable expectation of their son continuing to provide all of his wages to his parents. *Id.* at 168.

In *Terveer v. Baschnagel*, 3 Ohio App.3d 312 (1982), the Court of Appeals of Ohio considered an appeal of the denial of pecuniary damages on behalf of the family of a deceased twenty-two-year-old woman. The evidence had shown that the decedent not only had promised to purchase real estate with her sister, with whom she lived, but had provided money and services to the family with whom she did not reside:

> At the time of her death, decedent . . . helped her parents with their rental properties, regularly cut her brother's hair, [and] regularly cleaned the family's teeth[.] Her sister also testified that the decedent was saving money to pay back her parents for loans they had given her for school and for her car.

*Terveer*, 3 Ohio App. at 312. The Ohio Court, in vacating the judgment, concluded that the evidence presented by the family was sufficient to prove that the decedent intended to continue providing services to her family and sharing living expenses with her sister. *Id.* at 313. Additionally, the Ohio Court concluded that the evidence was sufficient to prove that the decedent intended to pay back the loans her parents made to her. *Id.*

---

( . . . continued)

In *Michigan Central Railroad Co. v. Vreeland*, 227 U.S. 59 (1913), the Supreme Court of the United States explained: "The [Federal Employers' Liability Act], in giving an action for the benefit of certain members of the family of the decedent, is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being,–that of 9 and 10 Vict. Chap. 93, known as Lord Campbell's Act." *Vreeland*, 227 U.S. at 69. To recover damages under the statute, "[t]here must, . . . appear some reasonable expectation of pecuniary assistance or support of which [beneficiaries] have been deprived." *Id.*

31

In *Medi-Stat, Inc. v. Kusturin*, 303 Ark. 45 (1990), the mother of an adult man, who died while undergoing medical treatment, was awarded pecuniary damages for her loss of the son's services, which the evidence showed included that the son "had assisted his mother with the care of his sister, who suffer[ed] from cerebral palsy, which enabled the mother to keep that child in the home instead of an institution." *Kusturin*, 303 Ark. at 50. On appeal, the Supreme Court of Arkansas concluded that the mother had presented "substantial evidence" demonstrating that she had "a reasonable expectation of a pecuniary benefit in the continued life of the decedent." *Id.* In addition to the son's commitment to caring for his sister, the Arkansas Court highlighted additional acts of commitment by the son, including his contributions of "past earnings to his mother and sisters" and his commitment to continue supporting his family while his mother continued her education. *Id.*

Distillation of the reasonable expectation of pecuniary benefit cases reflects that recovery of pecuniary damages is based not only on the reasonable expectation of the parent but also must be anchored in proof of intent on the part of the deceased adult child, which can be adduced in the form of evidence of legal duty, promise, or acts of intent. We differ from our intermediate appellate court in its emphasis on duration of services because, in our view, proof of the decedent's intent is not necessarily wholly dependent on evidence of duration, but rather can be developed through proof of a legal duty, promise, or acts of the decedent that reflects a continuing intent to serve or provide, of which evidence of duration may be a part.

32

Although we have expanded the quantum and quality of proof of the decedent's intent, we do agree with the Court of Special Appeals that Ms. Fowlkes failed to adduce sufficient evidence that Ms. Owens intended to provide household services in the future, absent her death. There was no proof adduced that Ms. Owens had a legal duty to provide services to her mother. There was also no evidence adduced of any promise, written or oral, by Ms. Owens to Ms. Fowlkes or provided to a third party, that the daughter intended to continue offering her services for any period of time.

In terms of acts of the daughter, while there was proof that she was "in the habit" of providing household services to her mother, with whom she had lived her entire life, and that Ms. Fowlkes wanted to live with her daughter forever, those pieces of evidence, without more, were insufficient to go to the jury. The proof that Ms. Fowlkes adduced was akin to the evidence adduced by the sons in *Mahone*, where being in the habit of acting was insufficient proof of pecuniary loss. *See Mahone*, 63 Md. at 147.

To permit a pecuniary damage award based solely on evidence of a symbiotic relationship of mother and daughter in the present case would be to allow a jury to engage in "speculation" about Ms. Owens's intent. *See Bowman*, 192 Md. at 695. To the extent that Ms. Fowlkes argues that proof of a deceased adult child's intent would be hard to come by, we disagree, as we have not seen that as an impediment in our review of the cases.

33

As a result, we affirm the judgment of the Court of Special Appeals, reversing the judgment of the Circuit Court for Baltimore City for $500,000 in economic damages to Ms. Fowlkes.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**